IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| HOWARD "PAUL" EGGER, | } |
| Plaintiff, | } } } |
| v. | } CASE NO.: } |
| PIEDMONT AIRLINES, INC., d/b/a AMERICAN AIRLINES, ELI EVANS, and MARVIN MULDER, | } JURY TRIAL DEMANDED } } } } |
| Defendants. | } |

## COMPLAINT

**COMES NOW** the Plaintiff, Howard "Paul" Egger ("Plaintiff" or "Mr. Egger"), by and through his undersigned counsel, Law Office of James W. Friauf, PLLC; and, for his Complaint against Piedmont Airlines, Inc., d/b/a American Airlines ("Defendant Piedmont"), Eli Evans ("Defendant Evans"), and Marvin Mulder ("Defendant Mulder") (collectively, "Defendants"), avers as follows:

### I. PARTIES

1. Plaintiff, Howard "Paul" Egger, is a resident citizen of the State of Tennessee, County of Knox.

2. Defendant Piedmont Airlines, Inc., d/b/a American Airlines, is a foreign corporation authorized to conduct business in the State of Tennessee and maintains its principal place of business in Salisbury, Maryland. At all times material hereto, Piedmont is and was engaged in the airline industry. Upon information and belief, at all times material hereto, Piedmont employed in excess of 500 employees. Piedmont's registered agent is C T Corporation System. Service of process may be perfected at 300 Montvue Road, Knoxville, Tennessee 37919.

1

3. Upon information and belief, Defendant Evans is a resident citizen of the State of Tennessee, County of Knox.

4. Upon information and belief, Defendant Mulder is a resident citizen of the State of Tennessee, County of Knox. Service of process may be effected on Defendant Mulder at McGhee-Tyson Airport.

## II. JURISDICTION AND VENUE

5. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-4 herein, inclusive.

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that this action is brought pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*

7. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the remaining causes of action averred in the Complaint brought pursuant to the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq.* and Tennessee common law. Such claims are so related to the claim within the original jurisdiction of this Court, it forms part of the same case or controversy.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in Blount County, Tennessee.

9. At all times material to the averments herein, Defendant Piedmont employed in excess of eight (8) employees, thereby bringing itself under purview of the THRA.

## III. GENERAL ALLEGATIONS

10. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-9 herein, inclusive.

11. Mr. Egger's employment with Defendant Piedmont commenced on or about March 4, 2019.

12. Mr. Egger is a baggage handler for Defendant Piedmont.

13. Mr. Egger's rate of pay is and has been Ten Dollars and 75/100 ($10.75) per hour since the commencement of his employment with Defendant Piedmont.

14. Mr. Egger has certain benefits associated with his employment with Defendant Piedmont, including no-cost air travel.

15. Beginning on or about August 15, 2019, Mr. Egger was subjected to *quid pro quo* sexual harassment and sexual assault by his direct supervisor, Defendant Evans.

16. Specifically, Defendant Evans summoned Mr. Egger to Defendant Evans's office to discuss an employment matter.

17. During the course of the meeting, Defendant Evans made statements to Mr. Egger, including asking Mr. Egger if he liked working for Defendant Piedmont. Defendant Evans further inquired whether Mr. Egger wanted to remain employed by Defendant Piedmont and advance within the company.

18. After Mr. Egger confirmed he enjoyed working for Defendant Piedmont, wanted to remain in its employ, as well as advance his career within the company, Defendant Evans instructed Mr. Egger that he (Mr. Egger) would need to expose his genitals to Defendant Evans.

19. Mr. Egger was astonished and appalled at Defendant Evans's instructions. Despite his trepidation to do so and, due to the fact he was concerned about the prospects of his future employment with Defendant Piedmont, Mr. Egger reluctantly complied with Defendant Evans's directive.

20. Defendants Evans proceeded to fondle Mr. Egger's genitals; Defendant Evans and photographed Mr. Egger's exposed genitals.

21. After sexually assaulting Mr. Egger, Defendant Evans instructed Mr. Egger to zip up his pants and leave Defendant Evans's office.

22. Defendant Evans continues to sexually harass Mr. Egger after the assault including, but not limited to, sending certain harassing text messages to Mr. Egger stating:

    a) "I can't wait to see that donkey dick hard!"

    b) "Hey, I weirded you out, didn't I?"

    c) "Yeahhhh[,] I'm sorry for weirding you out."

    d)  "Ha ha[.] I wouldn't call what I'm apologizing for "work" related."

  23.  Defendant Evans was Mr. Egger's direct supervisor at the time Defendant Evans sexually assaulted Mr. Egger as well as during the *quid pro quo* sexual harassment of Mr. Egger.

  24.  Mr. Egger reported Defendant Evans's sexual assault and *quid pro quo* sexual harassment to Defendant Piedmont.

  25.  Since Mr. Egger reported Evans's sexual assault and *quid pro quo* sexual harassment, Defendant Piedmont has engaged in a campaign of retaliation against Mr. Egger including: (1) twice suspending Mr. Egger's employment; (2) confiscating Mr. Egger's work badge; and, (3) having law enforcement escort Mr. Egger from the premises of McGhee-Tyson Airport.

  26.  Upon information and belief, Defendant Piedmont is presently threatening to terminate Mr. Egger's employment as a direct and proximate result Mr. Egger protesting Defendant Evans's sexual assault and *quid pro quo* sexual harassment, including filing a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

  27.  In addition to the sexual assault and *quid pro quo* sexual harassment Mr. Egger has suffered as a direct and proximate result of Piedmont and Evans's violations of state and federal law, Mr. Egger has been deprived of overtime compensation at a rate not less than one (1) and one-half (1/2) times his regular rate of pay for all hours worked in excess of 40 per week. The foregoing averred conduct was the direct and proximate result of Defendants knowing and willful violations of the FLSA.

  28.  More specifically, with the knowledge and direction of Defendants, Mr. Egger was not allowed to take a *bona fide* meal break during his work shifts.

  29.  To the contrary, Mr. Egger (and similarly-situated baggage handlers) were forced to undergo training and otherwise attend meetings with supervisors and/or Defendant Piedmont's management officials during the period Mr. Egger and his coworkers were supposed to be on a *bona fide* meal break.

4

Case 3:19-cv-00495-PLR-DCP   Document 1   Filed 12/03/19   Page 4 of 10   PageID #: 4

30. Mr. Egger and his coworkers were not compensated for the time he/they were suffered or permitted to work when he/they should have been on a *bona fide* meal break.

31. As a direct and proximate result of Defendants suffering and/or permitting Mr. Egger and his coworkers to work when he/they should have been on a *bona fide* meal break, Mr. Egger and his coworkers were not paid at a rate of not less than one (1) and one-half (1/2) times his/their regular rate of pay for all hours worked in excess of 40 per week (or at all).

32. Mr. Egger and certain coworkers were deprived of overtime compensation for numerous weeks during his/their employment with Defendant Piedmont and with the knowledge and/or direction of Defendant Evans and Defendant Mulder in the three (3) years preceding the filing of this Complaint.

33. Mr. Egger protested Defendants' illegal wage-and-hour practices and has attempted to marshal his similarly-situated coworkers to join in a FLSA-collective-action lawsuit against Defendants. Such actions constitute protect conduct pursuant to the FLSA.

34. Defendants are aware of Mr. Eggers' FLSA-protected conduct.

35. As a direct and proximate result of Defendants' displeasure with Mr. Egger engaging in FLSA-protected conduct, Defendants have commenced a campaign of retaliation against Mr. Egger, including: (1) twice suspending Mr. Egger's employment; (2) confiscating Mr. Egger's work badge; and (3) having law enforcement physically escort Mr. Egger off the premises of McGhee-Tyson airport.

36. Mr. Egger has suffered tremendous emotional trauma as a direct and proximate result of Defendants' illegal conduct, as averred more fully herein.

### IV. CAUSES OF ACTION

#### a. Failure to pay overtime compensation:

(*Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq.*)

37. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-36 herein, inclusive.

38. At all times material to the averments set forth herein, Plaintiff was an "employee", as that term is defined by the FLSA.

39. At all times material to the averments set forth herein, all Defendants were "employer[s]" as that term is defined by the FLSA.

40. At all times material to the averments set forth herein, Defendants suffered and/or permitted Plaintiff and his similarly-situated coworkers to work during periods when the same should have been relieved from work and permitted *bona fide* meal breaks.

41. As a direct and proximate result of Defendants suffering and/or permitting Plaintiff and his similarly-situated coworkers to work in lieu of taking *bona fide* meal breaks, Plaintiff and his similarly-situated coworkers were forced to work in excess of 40 hours per week.

42. Despite Plaintiff and his similarly-situated coworkers being suffered or permitted work in excess of 40 hours per week, Defendants failed to pay Plaintiff and his similarly-situated coworkers at not less than one (1) and one-half (1/2) times Plaintiff and his coworkers' regular rate of pay.

43. The foregoing averred conduct violates the FLSA, specifically 29 U.S.C. § 207.

44. As a direct and proximate result of Defendants' violations of the FLSA's overtime provision, Plaintiff and his similarly-situated coworkers have suffered injuries and damages, including wage theft, lost pay and benefits, and liquidated damages, as averred more fully herein.

b. <u>Retaliation</u>:

*(FLSA)*

45. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-44 herein, inclusive.

46. Plaintiff avers he has engaged in conduct protected by the FSLA, namely protesting Defendants' violations of the FLSA's overtime provision and attempting to recruit coworkers to assert claims against Defendants pursuant to the FLSA.

47. Specifically, as a direct and proximate result of Plaintiff's FLSA-protected conduct, Defendants twice suspended Plaintiff's employment, confiscated Plaintiff's work badge, and had law enforcement physically escort Plaintiff physically escorted off the premises of McGhee-Tyson.

48. The foregoing conduct violates the FLSA's anti-retaliation provision. 29 U.S.C. § 215.

49. As a direct and proximate result of Defendants' violations of the FLSA's anti-retaliation provision, Plaintiff has suffered injuries and damages as averred more fully herein.

    c.    *Quid Pro Quo* Sexual Harassment:

(*Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, et seq.*)

50. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-49 herein, inclusive.

51. Plaintiff is a member of a class protected by the THRA in that he is male.

52. As averred more fully herein, Defendant Piedmont, through the actions of its supervisory employee, Defendant Evans, subjected Plaintiff to *quid pro quo* sexual harassment and assault.

53. The averred conduct is a violation of the THRA.

54. As a direct and proximate result of Defendant Piedmont's violations of the THRA's prohibition of sexual harassment, discrimination, and the creation of a hostile work environment on the basis of sex, Plaintiff has suffered injuries and damages as averred more fully herein.

    d.    *Retaliation*:

(*THRA*)

55. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-54 herein, inclusive.

56. As averred more fully herein, Plaintiff protested Defendant Piedmont's discrimination on the basis of sex, sexual harassment, and the creation and/or toleration of a hostile work environment, including by filing a charge of discrimination with the EEOC.

57. The foregoing conduct constitutes conduct protected by the anti-retaliation provision of the THRA.

58. As averred more fully herein, as a direct and proximate result of Plaintiff engaging in conduct protected by the THRA, Defendant Piedmont has retaliated against Plaintiff.

59. As a direct and proximate result of Defendant Piedmont's violation of the THRA's anti-retaliation provision, Plaintiff has suffered injuries and damages as set forth more fully herein.

e. *Assault and Battery*:

(*Tennessee common law)*

60. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-59 herein, inclusive.

61. Defendant Evans's actions as averred more fully herein were intentional and deliberate and were undertaken with the intention to bring about harmful or offensive contact with Plaintiff.

62. Defendant Evans's intentional and deliberate actions resulted in an unpermitted touching of Plaintiff which was highly offensive to his person.

63. Plaintiff experienced fear and apprehension at Defendant Evans's intentional and deliberate actions resulting in forced touching of Plaintiff.

64. The foregoing acts by Defendant Evans constitute assault and battery.

65. As a direct and proximate result of Defendant Evans's assault and battery, Plaintiff has suffered injuries and damages and averred more fully herein.

f. *Intentional Infliction of Emotional Distress*:

(*Tennessee common law)*

66. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-65 herein, inclusive.

67. Defendant Evans's conduct as averred more fully herein was intentional or reckless and so outrageous it is not to be tolerated by a civilized society.

68. The foregoing actions by Defendant Evans constitute intentional infliction of emotional distress inflicted upon Plaintiff by Defendant Evans.

69. As a direct and proximate result of Defendant Evans's intentional infliction of emotional distress, Plaintiff has suffered serious mental injury and damages and is entitled to the relief averred more fully herein.

## V.     DAMAGES

70. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-69 herein, inclusive.

71. As a direct and proximate result of each and every one of the foregoing acts, conduct, and violations of the law alleged herein, Plaintiff has suffered damages in an amount, and according to proof, including, but without limitation, lost wages, lost overtime wages, loss of benefits, lost interest on wages and benefits, liquidated damages, actual monetary loss, inconvenience, embarrassment, humiliation, loss of lifetime earning capacity, and other incidental and/or consequential damages.

72. Plaintiff is further entitled to, and seeks recovery of, reasonable attorneys' fees and costs incurred pursuant to the FLSA and/or THRA.

73. Plaintiff further seeks an award of pre- and post-judgment interest as permitted by law.

## VI.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff sues Defendants for damages, lost wages, lost overtime wages, liquidated damages, and compensatory damages, directly and proximately resulting from Defendants' violations of the law as averred more fully herein in an amount not less than **ONE MILLION DOLLARS AND 00/100 ($1,000,000.00)**.

9
Case 3:19-cv-00495-PLR-DCP   Document 1   Filed 12/03/19   Page 9 of 10   PageID #: 9

**WHEREFORE**, Plaintiff sues Defendants for punitive damages, in that Defendants' conduct as alleged more fully herein were knowing violations of Plaintiff's federally-protected rights and Defendants' intentional, malicious, and/or reckless conduct as averred more fully herein in an amount not less than **FIVE MILLION DOLLARS AND 00/100 ($5,000,000.00)**.

**WHEREFORE**, Plaintiff respectfully demands payment of his reasonable attorneys' fees and costs incurred in bringing this action pursuant to the FLSA and THRA.

**WHEREFORE**, Plaintiff respectfully demands a jury be empaneled to hear this cause.

**WHEREFORE**, Plaintiff respectfully requests that this Court award such other and further relief as may be appropriate and assess the costs of this cause against the Defendants.

**Respectfully submitted** this 3rd day of December, 2019.

**HOWARD "PAUL" EGGER**

By: /s/ James Friauf
James W. Friauf (#027238)
LAW OFFICE OF JAMES W. FRIAUF, PLLC
9724 Kingston Pike
Suite 104
Knoxville, Tennessee 37922
Tele: (865) 236-0347
Fax: (865) 512-9174
Email: james@friauflaw.com
Our File No.: 19-127-EPL

*Attorney for Plaintiff, Howard "Paul" Egger*